UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EON BROWN,<br><br>        *Plaintiff*,<br><br>v.<br><br>FEDERAL ENERGY REGULATORY COMMISSION, *et al.*,<br><br>        *Defendants*. | Civil Action No. 24-2538 (SLS)<br><br>Judge Sparkle L. Sooknanan |

## MEMORANDUM OPINION

This case involves a federal employee seeking relief from an alleged hostile workplace and supervisor. Eon Brown, proceeding pro se, sued the Federal Energy Regulatory Commission (FERC) and his supervisor, Ahlam Kaissani, on September 24, 2024, citing seven expansive federal statutes, including the Violence Against Women Act, the Indian Civil Rights Act, the Family and Medical Leave Act, and the Victim and Witness Protection Act. The Defendants have moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons explained below, the Court grants the motion.[1]

### BACKGROUND

**A.  Factual Background**

The Court draws the facts, accepted as true, from the Plaintiff's Complaint and attachments. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). As

---

[1] Mr. Brown filed scores of documents in response to the Defendants' pleadings, including seventeen notices of exhibits (ECF Nos. 8-12, 14, 17, 19-24, 26, 29-31), a Motion for Temporary Injunction (ECF No. 13), a Supplemental Memorandum (ECF No. 18), and a Surreply (ECF No. 25). The Court notes the lengths that Mr. Brown has gone to prove his case. But after thoroughly reviewing the record, the Court concludes that his claims must be dismissed.

Mr. Brown is proceeding pro se, the Court will consider his complaint "in light of all filings, including filings responsive to a motion to dismiss." *Moini v. LeBlanc*, 456 F. Supp. 3d 34, 40 (D.D.C. 2020) (citations omitted).

Mr. Brown fills his complaint with sweeping claims. *See* Compl. at 4–5, ECF No. 1. He alleges a range of intangible injuries under a seemingly random selection of federal statutes, most of which narrowly prohibit wrongdoing in situations far removed from this one. *See, e.g.*, 25 C.F.R. § 11.443 (governing harassment on Federal Indian land); *see also* 18 U.S.C. § 1514 (permitting a government attorney to file a civil action to restrain harassment of a victim in a federal criminal case). Without connecting these statutes to his case, Mr. Brown shares generalized injuries, writing that he has "been subjected to relentless harassment, bullying/intimidation, cyberbullying, cyberstalking, defamation, retaliation" and other "violation[s]" of his rights between March 2024 and August 2024, which are "still present." *See* Compl. at 4. He writes that this behavior occurred at FERC, and that the "level of severe hostile work environment and misconduct" has been "very detrimental" to his "mental health." *Id*. Under the "Relief" section, he asks the Court to "rectif[y] . . . all unjust, discriminatory, retaliatory, [and] improper actions," which includes "rescind[ing]" his "performance improvement plan"[2] and awarding him "court fees, attorney fees, legal fees, phone costs, [and] postage fees." *Id.* at 4–5. He also asks to be "removed from the management of Ahlam [Kaissani] altogether."

More details— although, many ambiguous—emerge in Mr. Brown's additional filings. Spanning more than 700 pages, they include over a dozen exhibits, a Motion for a Temporary Injunction and Restraining Order, ECF No. 13, a Supplemental Memorandum, ECF No. 18, and a

---

[2] In his Complaint, Mr. Brown mentions just one performance review. But the exhibits he filed include multiple negative performance reviews. *See, e.g.*, ECF No 13-1 at 123.

Surreply, ECF No. 25. In a mix of screenshots, web pages, his own words, and emails with other FERC employees, he attempts to paint a picture of the harassment he has been experiencing. One exhibit depicts an EEO complaint Mr. Brown filed on May 13, 2024, where he alleged that the harassment began on March 4, 2024, after a "Performance Discussion Meeting" with his supervisor, Ms. Kaissani. *See* ECF No. 13-1 at 127–128; ECF No. 13-2 at 1–2. During the meeting, Ms. Kaissani became "aggressive, abrasive, ill-mannered, unprofessional, [and] hostile[.]" ECF No. 13-1 at 128. She "painted multiple false narratives" regarding his work performance, implied that he is "ineffective," and "didn't say anything positive," ECF No. 13-1 at 128. On May 17, 2024, Raquel Snowden, an EEO Counselor, interviewed Mr. Brown as a part of the "initial EEO information fact gathering process." *See* Defs.' Mot. to Dismiss, Kadia R. Myles Declaration, ECF No. 4-1 at 3. On June 5, 2024, Ms. Snowden concluded her investigation by emailing Mr. Brown to tell him that she was issuing a "Notice of Right to File." *See* Notice of Internal Exhibits, ECF No. 9 at 2. Mr. Brown's exhibits do not include the notice itself, but regulatory guidance explains that this notice gave him 15 days to file a formal complaint with the EEO. *See* 29 C.F.R. § 1614.105 ("The notice shall inform the complainant of the right to file a discrimination complaint within 15 days of receipt of the notice[.]"). The record contains no evidence that Mr. Brown took this step.

On June 24, 2024, Mr. Brown filed an official grievance with the FERC employees' union, AFGE Local 421, where a representative wrote: "Mr. Brown has been subject to repeated, regular, and incessant micro-aggressions and inequity stemming from disparate treatment from Ms. Kaissouni [sic], due to his race and color." *See* ECF No. 13-1 at 92. The grievance further alleged that Ms. Kaissani not only "became aggressive, unprofessional, and hostile," during the March 2024 meeting, but "threaten[ed] Mr. Brown's job and grade promotional level

authority." *Id.* On August 12, 2024, Mr. Brown filed an "Unfair Labor Practices" charge with the Federal Labor Relations Authority where he claimed that Ms. Kaissani was retaliating against him by refusing to allow a union representative to attend a meeting. *See* ECF No. 13-2 at 5–9. On August 24, 2024, he filed a complaint with the Office of Special Counsel where he wrote that he had had been subjected to "a severe hostile environment, put downs, mockery, excessive micro- aggressions, and antagonistic acts[.]" *See* ECF No. 13-2 at 18.

The remainder of the record contains a mix of doctors' notes stating that Mr. Brown is suffering from anxiety, *see, e.g.*, ECF No. 13-1 at 7, printed webpages about the standards of harassment under various statutes, *see, e.g.*, ECF No. 13-2 at 109, as well as screenshots of emails and calendar invites, *see,* e.g., ECF No. 13-3 at 30. Under a header that reads "Evidence of Inappropriate Work Feedback," Mr. Brown shares a screenshot of an email from Ms. Kaissani where she wrote: "Going forward, it's essential that you adhere to the deadlines provided for completing tasks, as this particular one was not turned in on time." ECF No. 13-1 at 104. In another, he provides an email that he sent to Ms. Kaissani telling her that it made him "uncomfortable" that she emailed after 7 p.m. *See* ECF No. 13-2 at 63.

Medical assessments peppered into the record show that Mr. Brown repeatedly sought attention for extreme stress. *See* ECF 13-1 at 1–41. On September 9, 2024, Doctor Peter Jan Jr. from the Mid-Atlantic Permanent Medical Group wrote: "Eon Brown is a 31-year-old diagnosed with anxiety, depression, stress, chronic headaches, and PTSD," and he reports "a recent exacerbation of his mental health conditions due to a distressing work environment." *Id.* at 26. On November 14, 2024, a union representative emailed FERC's workplace relations team demanding they look at "additional evidence" in his case. ECF No. 13-3 at 35. The evidence appears to be an August 2024 email from an employee at FERC to Ms. Kaissani in which the

4

employee said that she planned to nominate Mr. Brown for an award. *See* ECF No. 13-3 at 33. On November 14, 2024, Mr. Brown forwarded the newly surfaced email chain to another colleague. *Id.* at 32. He wrote that he was "holding back tears," because Ms. Kaissani "deliberately and maliciously" did not share the nomination, which he viewed as part of her plan to "perpetually antagonize, devalue, [and] alienate" him. *Id.*

### B.   Procedural Background

Mr. Brown filed this Complaint on September 4, 2024, bringing seven claims against his employer, FERC, and his supervisor, Ms. Kaissani. *See* Compl. The Defendants moved to Dismiss his Complaint on November 8, 2024. Defs.' Mot. to Dismiss (Defs.' Mot.), ECF No. 4. Mr. Brown filed a brief response on December 2, 2024, ECF No. 6, and the Defendants replied on December 9, 2024, Defs.' Reply, ECF No. 7. Mr. Brown filed many more documents, including a combined Motion for a Temporary Injunction and Motion for a Temporary Restraining Order, which contains hundreds of pages of exhibits, *see* Pls.' Combined Mot. for Temp. Inj. & Temp. Restraining Order, ECF No. 13. The Defendants filed a Response to Mr. Brown's Motion on January 15, 2024. Defs.' Response, ECF No. 16. The Motions are fully briefed.

### LEGAL STANDARD

A deep dive into the record is typically not appropriate at the motion to dismiss stage. But the Court is mindful that "where the non-movant is proceeding *pro se* and has filed multiple submissions in opposition to the motion to dismiss, the district court should endeavor to read the party's filings together and as a whole." *Fennell v. AARP*, 770 F. Supp. 2d 118, 121 (D.D.C. 2011). In other words, no matter how "inartfully pleaded" a pro se plaintiff's complaint, a Court must grant him the benefit of all inferences that can flow from the facts he alleges. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Courts must hold pro se pleadings to a "less stringent standard than

formal pleadings" drafted by lawyers, but "need not assume the role of [their] advocate." *Mehrbach v. Citibank, N.A.*, 316 F. Supp. 3d 264, 268 (D.D.C. 2018).

To survive a Rule 12(b)(6) challenge, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (1955)). A pro se plaintiff need not submit intricately detailed factual allegations, but he must "furnish 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Montgomery v. Mayorkas*, No. 23- cv-3931, 2024 WL 4973406, at *3 (D.D.C. Dec. 4, 2024) (citing *Twombly*, 550 U.S. at 545).

## DISCUSSION

The Defendants identify numerous fatal errors in Mr. Brown's case. For most of his claims, they argue that he lacks a private right of action. Defs.' Mot. at 3. As to the two remaining claims, defamation under the Federal Torts Claim Act (FTCA) and hostile workplace under Title VII, they argue that dismissal is proper because Mr. Brown failed to exhaust administrative remedies or plead sufficient facts. *Id.* After weighing all the filings at issue, including the trove of documents that Mr. Brown produced, the Court grants the Defendants' Motion and dismisses the case.

### A.   Private Right of Action

Mr. Brown advances a scattershot array of claims that this Court has done its best to unscramble. Most fail out of the gate for a simple reason: the fact that a person is harmed, or a federal statute is violated, "does not automatically give rise to a private cause of action in favor of that person." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979). While some federal statutes contain explicit language authorizing individuals to bring a lawsuit, *see, e.g.*, the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, ("[a] civil *action may be brought*…under 29 U.S.C. § 626(e)") (emphasis added), many federal statutes do not. A "private

right of action, which courts use to describe the right to bring a lawsuit, "must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). A private right of action can be identified either through "rights-creating language" or factors like legislative intent. *Sandoval*, 532 U.S. 275 at 271 (internal quotation marks omitted). Courts analyzing whether a statute creates a private right of action pay close attention to whether the plaintiff is "one of the class[es] for whose especial benefit the statute was enacted." *Texas & P. Ry. Co. v. Rigsby*, 241 U.S. 33, 39 (1916). Mr. Brown's claims severely miss the mark. After combing through his submissions, the Court finds that five of the seven statutes or regulations that he cites lack a private right of action.

*First*, Mr. Brown cites a chapter of the Victim and Witness Protection Act, which allows a government attorney to stop the harassment of a victim or witness in a federal criminal case. *See* Compl. at 3; *see also* 18 U.S.C. § 1514. As the Defendants note, Mr. Brown "pleads no facts to support a plausible inference either that he is a victim or witness in a criminal case or that Defendants harassed him." Defs.' Mot. at 10; *see also Dickson v. Barnes*, No. 22-cv-2698, 2022 WL 16571190, at *1 (D.D.C. Oct. 28, 2022) (finding that a pro se plaintiff's reliance on 18 U.S.C. § 1514 failed because "no government attorney filed an application for a temporary restraining order in this case").

*Second*, Mr. Brown raises 25 C.F.R. § 11.443, a regulation that governs the administration of justice within tribal courts regarding harassment. *See* Compl. at 3; *see also* 25 C.F.R. § 11.443. But Mr. Brown fails to show that he was harassed in any protected area of Indian country. *See* Defs. Mot. at 10. Even if he had, federal courts have rejected private claims under 25 C.F.R. § 11.443, reasoning that "private citizens may not enforce federal criminal laws." *Lopez v. Pec*, No. 23-cv-23012, 2025 WL 25560, at *15 (D.N.J. Jan. 3, 2025).

*Third*, Mr. Brown raises a provision of the Violence Against Women Act that criminalizes

7

stalking. *See* Compl. at 3; *see also* 18 U.S.C. § 2261A. Again, this "accords no private right of action." *See LaRue v. Johnson*, No. 16-504, 2018 WL 1967128, at *11 (D.D.C. Feb. 22, 2018) (collecting cases).

*Fourth*, Mr. Brown raises a portion of the Securing the Protection of Our Enduring and Established Constitutional Heritage Act governing the recognition of foreign defamation judgments. *See* Compl. at 3; *see also* 28 U.S.C.A. § 4102. As the Defendants note, Mr. Brown "does not plausibly allege that there is a foreign judgment for defamation." Defs.' Mot. at 11.

*Finally*, Mr. Brown cites 29 C.F.R. § 825.220, a regulation from the Family and Medical Leave Act that prohibits employers from interfering with or retaliating against whistleblowers. *See* Compl. at 3; 29 C.F.R. § 825.220(a)(2). Mr. Brown's exhibits show that he filed many complaints about his supervisor, but he has presented no evidence that "he engaged in protected activity under the statute[,] or that [the] Defendants retaliated against him for doing so." Defs.' Mot. at 11.

Because none of these statutes or regulations provide a private cause of action, the Court dismisses the claims that rely on them.

### B. Defamation

Turning to the defamation claim, although Mr. Brown does not explicitly mention the Federal Torts Claims Act as grounds for his claim, the Court will treat it as such given his pro se status. *See Hoai v. Superior Ct. of D.C.*, 539 F. Supp. 2d 432, 434 (D.D.C. 2008) ("*pro se* plaintiffs are not required to use specific legal terms or phrases") (emphasis in original). The FTCA provides "the exclusive remedy for most claims against Government employees arising out of their official conduct." *Hui v. Castaneda*, 559 U.S. 799, 806 (2010). It "effected a limited waiver of the government's traditional immunity from suit by authorizing federal district courts to exercise

exclusive original jurisdiction over certain tort actions against the United States." *Lombard v. United States*, 690 F.2d 215, 229 (D.C. Cir. 1982) (Ginsburg, J., concurring in part). But the FTCA only waived the government's immunity for negligent acts by federal employees. *See Kugel v. United States*, 947 F.2d 1504, 1506 (D.C. Cir. 1991) ("[Congress] has not waived immunity for every type of tort."). The statute includes an "intentional tort exception," which states that liability is not waived for "any claim arising out of . . . libel [or] slander[.]" 28 U.S.C. § 2680(h). "In other words, both the United States and federal employees acting within the scope of their duties are immune from common law actions for libel and slander." *Simpkins v. Dist. of Columbia Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997). Mr. Brown's defamation claim is thus barred under the FTCA. *See, e.g.*, *Chatman v. Perdue*, No. 17-cv-1826, 2020 WL 6075678, at *3 (D.D.C. Oct. 15, 2020) (dismissing defamation claim against United States as barred by sovereign immunity).[3]

### C.     Title VII

Finally, Mr. Brown's Title VII claim fails. The Defendants first argue that Mr. Brown did not exhaust his administrative remedies before filing the complaint. This is true, and not insignificant. While filing complaints with the Equal Employment Office is cumbersome, the "gauntlet of agency procedures and deadlines" required to "administratively exhaust" these claims serve an important purpose. *Crawford v. Duke*, 867 F.3d 103, 105 (D.C. Cir. 2017). These "'rigorous exhaustion requirements'" work to "preserve[,] for the employing agency[,] a 'crucial administrative role' in addressing alleged violations." *Webster v. Del Toro*, 49 F.4th 562, 566 (D.C. Cir. 2022) (quoting *Brown v. GSA*, 425 U.S. 820, 832 (1976)).

---

[3] The Defendants also argue that Mr. Brown failed to exhaust administrative remedies under the FTCA. Defs.' Mot. at 4. Not so. While plaintiffs must first exhaust administrative remedies before bringing an FTCA claim, defamation is not a viable FTCA claim. Mr. Brown had no duty to exhaust administrative remedies under the FTCA because he had no viable claim. *See Simpkins*, 108 F.3d at 371.

As failure to exhaust is an affirmative defense under Title VII, it is the Defendants' burden to prove that Mr. Brown failed to complete this prerequisite. *See Koch v. Walter*, 935 F. Supp. 2d 164, 170 (D.D.C. 2013). Courts faced with this inquiry may consider EEO administrative records "without converting a motion to dismiss into a motion for summary judgment" because "such records are public documents of which a court may take judicial notice." *Johnson v. Loc. Lodge 1759, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, No. 18-cv-1150, 2019 WL 2503909, at *3 n.5 (D.D.C. June 17, 2019) (cleaned up). The Defendants have met their burden. Mr. Brown received a "Notice to File" on June 5, giving him fifteen calendar days to file a formal administrative EEO complaint with the agency. *See* Myles Decl. at 3. Mr. Brown did not do so and instead filed suit in this Court. He thus failed to exhaust his administrative remedies. The Court again acknowledges that Mr. Brown went to great lengths to bring his claims in this Court, but a failure to exhaust administrative remedies cannot be overcome.

In any event, the Defendants argue that Mr. Brown fails to state a plausible claim for relief under Title VII. The Court agrees. To plead a Title VII claim, a plaintiff may use either direct or circumstantial evidence which "permits an inference of discrimination." *Jenkins v. D.C.*, 281 F. Supp. 3d 77, 83 (D.D.C. 2017) (quoting *Holcomb v. Powell*, 433 F.3d 889, 899 (D.C. Cir. 2006)). When a plaintiff provides only "circumstantial support," courts must turn to the framework set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*. *See Battle v. D.C. Dep't of Transp.*, No. 19-cv-682, 2020 WL 474632, at *3 (D.D.C. Jan. 29, 2020). Under this framework, a plaintiff must prove, "by a preponderance of evidence," that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'" *Montgomery*, 2024 WL 4973406, at *3. While "detailed factual allegations are not necessary," a plaintiff must advance "sufficient factual matter,

10

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 663 (internal quotation marks and citations omitted). The information must be sufficiently detailed enough to "nudge" a plaintiff's claims over the line from "conceivable" to "plausible." *Id.* at 680 (internal quotation marks and citations omitted).

Mr. Brown fails to meet this burden. He employs colorful language to capture the alleged harassment he has faced, but he provides almost no concrete details. He makes vague conclusory statements, calling Ms. Kaissani's behavior "antagonistic" and "intolerable." *See* ECF 13-2 at 18. He points to arbitrary actions, such as Ms. Kaissani making "inappropriate head gestures" during a meeting on his performance, shooting him "unfavorable faces" and delivering "inappropriate and crude remarks," while subjecting him to "excessive micro-managing." ECF No. 13-1 at 128. These allegations are not sufficiently detailed to withstand dismissal.

But even assuming Mr. Brown had pleaded sufficiently detailed facts, he lacks another critical element: evidence *linking* this action to a protected trait or activity. *See Bryant v. Brownlee*, 265 F. Supp. 2d 52, 63 (D.D.C. 2003). Mr. Brown's allegations do not support an inference that the events he describes "have any racial . . . overtones." *Bryant*, 265 F. Supp. 2d at 64. Instead, they appear "completely neutral with regard to these protected classifications" and reflect "instead strained relations with [his] coworker[] result[ing] from job-related tensions or personality conflicts." *Id.* One of the few times Mr. Brown mentions race is regarding a failing grade that Ms. Kaissani gave him on a performance review, which suggested to Mr. Brown that Ms. Kaissani wanted him "to be submissive to her as an African American male by flexing her authority." ECF No. 13-1 at 128. This conclusory statement alone does not support a racial discrimination claim .

As to Mr. Brown's multiple poor performance reviews, *see, e.g.*, ECF No. 13-1 at 128, even if he had proven a causal connection between his reviews and a protected characteristic such

11

as race, this type of workplace action fails to meet the high threshold for harassment under Title VII, *see Sims v. Sunovion Pharms., Inc.*, No. 17-cv-2519, 2020 WL 6822696, at *22 (D.D.C. Nov. 20, 2020) ("Many of the challenged actions here—including [the] Plaintiff's performance review and placement on a [Performance Improvement Plan]—are the type of work-related actions by supervisors that provide insufficient grounds for a hostile work environment claim.") (internal quotation marks and citations omitted); *see also Lowe v. Jackson*, 28 F. Supp. 3d 63, 81 (D.D.C. 2014) ("[T]here is no basis for the Court to find that [the Performance Improvement Plan's] implementation was tantamount to discriminatory intimidation, ridicule, and insult.") Mr. Brown insists that his performance reviews are actionable as they contain some falsehoods. But this, too, fails. *See Hutchinson v. Holder*, 815 F. Supp. 2d 303, 322 (D.D.C. 2011) ("negative performance reviews—even if inaccurate, as [the] Plaintiff claims—are not strong indicia of a hostile work environment"). In sum, while the Court is sympathetic to Mr. Brown's plight, his surface allegations under Title VII collapse under the requirements of Rule 12(b)(6).

## CONCLUSION

For these reasons, the Court grants the Defendants' Motion to Dismiss, ECF No. 4, and denies the Plaintiff's Motion for a Temporary Injunction and a Temporary Restraining Order, ECF No. 13.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:   March 24, 2025